Curia, per
Evans, J.
There are seven grounds in arrest of judgment. The first has been so often decided, that I do not think it necessary to say any thing on it. The second seems to be identical with the sixth, and will be considered with that ground. I shall consider the others in their order.
By the Act of 1754, (7 Stat. 426,) it is made a capital felony to aid a slave in running away, and departing from his master’s service. By the Act of 1821, (7 Stat. 460,) it is a misdemeanor, punishable by fine and imprisonment, “to harbor, conceal, or entertain any runaway or fugitive slave.” If a later statute impose a milder punishment for the same offence, it is a repeal of the former; but in this case, the two statutes relate to distinct matters. The first punishes for aid and assistance rendered to the slave in the act of running away, and departing from the service of the master; the latter punishes for harboring, concealing or entertaining a slave already a runaway. The 4th ground alleges a defect in the indictment, in this particular, that it does not allege that the prisoner knew the negro woman, Hetty, was a slave. The general rule is, that when a statute creates a new offence, it is sufficient to charge the offence in the words of the statute. This has been done in this case. The indictment is in conformity with the precedents in common use, and is the same form used in Blease’s case, 1 McMul. 472. But where the statute declares that certain acts shall constitute an offence already existing at common law, then the offence shall be set out according to the usual forms. 3 McC. 533. When the Legislature, by the Act of 1821, made it a capital crime to *135 murder a slave, this court decided that an indictment for that offence should contain such a description of the mode of perpetration as was necessary in charging a common law murder. It might have been sufficient evidence, to authorize the acquittal of the prisoner, that he supposed and believed Hetty to be a free person of color. His ignorance of the fact, that she was a slave, may be an excuse, but his knowledge of her condition, as a slave, is not of the essence of the crime, necessary to be alleged and proved by the prosecutor. A scimter is never necessary to be alleged, except when the crime is not complete, without some extrinsic circumstance within the prisoner’s knowledge, as in cases of aiding a prisoner to escape, uttering a forged note or bill, and cases of that description, where, without the scienter, the act is free from guilt. The legal condition of all persons of Hetty’s color, is slavery, and it cannot be necessary to allege a knowledge of what the law presumes.. These remarks apply very well to the 5th ground, which alleges a defect in the indictment, in not alleging the intention of the prisoner to aid the slave in going beyond “the limits of the State.” It is said the Acts passed prior to the Act of 1754, made this a part of the of-fence. I should rather conclude from the omission in the Act of 1754, that the Legislature intended to make the of-fence complete without it. It is very certain these words are not in the Act, and need not be alleged or proved.
The 7th ground alleges, as a defect in the indictment, that it does not “contain a distinct substantive averment, with time and place, that the slave, Hetty did runaway.” This ground has the support of the separate opinion of Judge Earle, in the case of the State vs. Blease, 1 McMul. 472. The form of the indictment is the same in this case, as that used in Blease’s case, which is there said to be according to the most approved precedents. The indictment must set out every fact which is necessary to make up the guilt of the prisoner, and if any of these facts are omitted, the judgment will be arrested. The verdict establishes that the prisoner did the acts charged in the indictment, but if these do not amount to a crime, no sentence can be pronounced upon him, because all the facts alleged may be true, and yet the prisoner has violated no law. *136 There is no doubt that the running away of the slave is an essential part of the crime, and that it must be distinctly alleged and proved. In this case, the indictment alleges that the prisoner did aid a certain female slave named Het.ty, “the property, (fee. in running away and departing from the service,” (fee. by means whereof the owner, from thence hitherto, has been deprived of the use and benefit of the said slave,” The offence might have been stated in the way indicated by Judge Earle, but the fact would not, by such statement, have been more clearly and distinctly charged than it is. The running away of the slave and the aid afforded make up the offence. If these distinctly appear, it is sufficient. The idea that he aided her in running away, is inseparable from the idea that she did run away. Unless she did runaway, how could he aid her in doing so?
• I come now to the consideration of the 6th ground, which alleges, that the Act of 1754, so far as it refers to aiding a slave in running away, is restricted exclusively, by its very terms, to aiding a male slave. The words of the Act are, “all and every person or persons who shall inveigle, steal, and carry away any negro or any slave or slaves, or shall hire, aid or counsel any person or persons to inveigle, steal or carry away, as aforesaid, any such slave, so as the owner or employer of such slave or slaves, shall be deprived of the use and benefit of such slave or slaves, or shall aid any such slave in running away, or departing from his master, or employer’s service.” The argument is, that his master necessarily restricts the offence to aiding a male slave, because if a female was included in the Act, the words would be her master, or his or her master. That such was not the intention, I think, is very clear. The words in the first part of the Act, are “shall inveigle, steal, or carry away, any negro or other slave.” This is, certainly, comprehensive enough to include both male and female. In that part of the Act, which creates the offence of aiding a slave to run away, the words are “any such slave,” manifestly referring to such slaves as are mentioned above, to wit, any negro or other slave, without regard to sex. But it is said, that penal statutes are to be construed strictly, and nothing is to be included in them by intendment. There is no doubt this is the general rule, but it is also a rule that the courts *137 are not to narrow the construction so that offenders may-escape. “We are to look to the words in the first instance,” said Buller, J. (1 Term R. 96,) “and where they are plain, we are to decide on them ; if they are doubtful, then we are to have recourse to the subject matter.” And in a late work, Dwarris, on Statutes, 79, Law Library, 9 vol. it is said, “statutes, though penal, have been taken by intendment, to the end that they should not be illusory, but should take effect according to the express intendment of the makers of the Act. Thus, by the statute 25 Ed. 3, the killing of a master, is adjudged treason, and it extends by construction to the mistress. The statute 3 Henry 7, c. 1, is, “that the wife or heir of him .so slain, shall have the appeal ; the heir of a tooman murdered, shall have the appeal for apices juris non sunt jura.”
These authorities, it seems to me, are conclusive of the question.
On the motion for a new trial, I have but few remarks to make. To go through all the facts, would be an unprofitable consumption of time. In criminal cases, on account of their great importance, both to the country and the accused, the court more readily inclines to grant a new trial, than in civil cases. But upon a review of all the facts, we cannot say that the evidence did not authorize the verdict. The motion in arrest of judgment, is dismissed on all the grounds, and the application for a new trial is refused.
O’Neall, Butler and Wardlaw, JJ. concurred.